**Elie P. AGHNIDES, Plaintiff,**

v.

**Edwin L. REYNOLDS, Acting Commissioner of Patents, Defendant.**

Civ. A. No. 246–64.

United States District Court
District of Columbia.

May 11, 1965.

William D. Hall, Washington, D. C., for plaintiff.

Clarence W. Moore, Sol., Washington, D. C., for defendant.

JACKSON, District Judge.

This is an action under 35 U.S.C. § 145 in which the plaintiff, Elie P. Aghnides, seeks to have the Court authorize the Commissioner of Patents to issue to him a patent containing claims 1, 3 through 6, and 11 through 16 of his application Serial No. 128,801, filed August 2, 1961, entitled "Liquid Jet Forming Device."

The invention relates to a faucet aerator, the essentially novel feature of which is a pair of perforated discs, located upstream of an air inlet, and having perforations of such shape as to define a chamber between the discs in which a vacuum is created during flow of water through the aerator.

Claim 1 is representative and reads as follows:

"1. A liquid discharge device comprising a pair of superposed members with at least one hole in the upper member and a complementary hole in the lower member for each hole in the upper member, said complementary holes being aligned with each other, said two members defining a vacuum air chamber between them which communicates with the downstream side of the hole in the upper member and the upstream side of the lower member, said two members including means for rendering said chamber airtight except for said holes, means for applying liquid under pressure to the upper side of the upper member, and the holes in the upper member being large enough to fill the holes in the lower member with liquid to prevent entry of air into the vacuum chamber and thus enable a vacuum to be set up therein, the outlet and of each hole in the upper member being not substantially larger than the complementary hole in the lower member and so close thereto that all the water from the hole in the upper member enters its complementary hole in the lower member leaving the vacuum chamber full of air."

The Patent Office Board of Appeals affirmed the Examiner's rejection of claims 1, 3 through 6, and 11 through 16, as unpatentable over a United States patent to Aghnides (No. 2,316,832, April 20, 1943) in view of a United States patent to Rockwood (No. 2,247,311, June 24, 1941).

The Aghnides patent discloses a faucet aerator having two perforated discs, which are spaced so they define a cylinderical chamber between them, the chamber being provided with a peripheral seal. The perforations are in axial alignment.

The Rockwood patent discloses a spray fixture which delivers aerated water to a body being sprayed. The fixture includes upper and lower plate members having complementary holes which are axially aligned. The outlet end of each hole in the upper member is not substantially larger than the complementary hole in the lower member. The water passes through the holes in the upper member and enters the complementary holes in the lower member.

At trial, it was admitted that the critical issue is whether the vacuum chamber really improves the claimed device. The Board of Appeals found the vacuum chamber to be novel, but said: "There is no reason * * * why a vacuum chamber * * * would be of any effect." The Board went on to hold, however, that "If * * * it could be shown by factual data that some unexpected beneficial effect is given, which, in fact, increases fluid flow, due to the presence of the vacuum chamber, such would disprove the analysis we have above given".

The plaintiff's efforts, accordingly, were devoted to showing that the vacuum chamber indeed "increases fluid flow". The plaintiff himself testified that he had experimented with the device in a manner which established that the vacuum chamber made a significant difference. He described tests in which, holding all other variables constant, he first placed the device under a faucet and measured the flow coming out of the faucet and also the pressure in the faucet upstream of his device. The device was the same as the device he seeks to patent except that he allowed the chamber which had previously contained a partial vacuum to communicate through a hole with the outside atmosphere. He related that as he closed the communication with the atmosphere he was able to measure a decided improvement in characteristics of the flow. These tests were not witnessed by anyone other than the plaintiff.

In response to this testimony, the defendant contended mainly that the test was not sufficient to meet the requirements the Board of Appeals set forth as being necessary for disproving its analysis of the vacuum chamber.

The Court, obviously, is faced with a situation where some doubt exists as to the utility of an admittedly novel con-

struction. Common sense indicates that if in fact the device has no utility, the public will not be harmed by allowing its inventor to keep others from using it. On the other hand, however, if the device does have utility which has not fully been appreciated, the inventor will be denied the fruits of his discovery through the ignorance of those entrusted with judging it. Some guidance in these matters has been provided by the U. S. Court of Customs and Patent Appeals, which recently held that doubts such as this should be resolved in favor of the patent applicant. In the case of In re Ignatius Nurkiewicz, 338 F.2d 1020 (1964) that Court stated:

> "It must be conceded that a good deal of the appellant's argument for his invention is more or less theoretical. However, the Patent Office has not cited anything to dispute the theory, and there is no prior art which discloses a bottom member in the shape of a hemisphere, nor is there any which claims any improvement in the sealing function due to the curved shape of that member. It is possible that, in a practical construction, due to the necessary rigidity of the bottom member, the forces involved will not be significant enough to produce the new and unexpected result asserted and that, in such case, we would be left with nothing but a designer's choice over the prior art. However, the rule is that, in case of a doubt as to the factual basis supporting the conclusion of the Board of Appeals, the doubt should be resolved in favor of the applicant."

Following this precedent, and what the Court believes is fairness and common sense, the inventor's sworn testimony will be accepted as sufficient for establishing that the vacuum chamber in fact "increases fluid flow". Since this finding is all the Patent Office Board of Appeals would have required in order to grant the plaintiff a patent, this finding disposes of the case.

The Court will find for the plaintiff and against the defendant, and will authorize the Commissioner of Patents to grant a patent containing claims 1, 3 through 6, and 11 through 16 of plaintiff's application Serial No. 128,801.

The above Opinion contains Findings of Fact and Conclusions of Law.